# IN THE COURT OF APPEALS OF IOWA

No. 22-1153
Filed November 17, 2022

**IN THE INTEREST OF E.H. and G.F.,**
**Minor Children,**

**S.J., Mother,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Mahaska County, Rose Anne Mefford, District Associate Judge.

　　A mother appeals the termination of her parental rights to two children. **AFFIRMED.**

　　Lynnette M. Lindgren of Faulkner, Broerman & Lindgren, Oskaloosa, for appellant mother.

　　Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

　　Patrick Joseph Mahaffey of Mahaffey Law Office, Montezuma, attorney and guardian ad litem for minor children.

　　Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**VAITHESWARAN, Presiding Judge.**

A mother appeals the termination of her parental rights to two children, born in 2007 and 2013. She contends (1) the State failed to prove the children "could not be returned to [her] custody at the time of the termination hearing"; (2) the department of health and human services failed to make "reasonable efforts to reunify [her] with her child[ren]"; and (3) termination was not in the children's best interests "due to the closeness of the parent-child relationship" and because a guardianship "would allow the child[ren] to be placed in a safe and stable environment while also preserving the child[ren]'s close bond with [her]."

The district court terminated the mother's parental rights pursuant to two statutory grounds. Because she only challenges one of the grounds, we could affirm on the other. *See In re T.S.*, 868 N.W.2d 425, 435 (Iowa Ct. App. 2015) ("When the juvenile court orders termination of parental rights on more than one statutory ground, we need only find grounds to terminate on one of the sections to affirm."). We elect to proceed to the merits of the ground she appeals, which requires proof of several elements, including proof the children cannot be returned to parental custody. *See* Iowa Code § 232.116(1)(f)(4) (2021).

The department intervened in October 2020 "due to concerns of domestic violence and methamphetamine use by" the mother. Its most recent involvement came on the heels of another case, which closed just four months earlier. The department also intervened two other times, with the first contact occurring a decade earlier, when the older child was just two-and-a-half years old and was left home alone. The mother's methamphetamine use precipitated all four interventions.

The State applied to have the children temporarily removed from the mother's custody. The district court granted the application. The court later adjudicated the children in need of assistance. One child was placed with her father and then with her paternal grandmother, and the other child was placed with a nonrelative and later with a paternal relative.

The mother successfully completed a drug treatment program but relapsed within a month. She attended treatment at another facility but again relapsed. Prior to the termination hearing, the department reported that the mother was not "able to maintain her sobriety throughout the life of this case" or "maintain her sobriety for a significant period of time after" the department "closed prior cases." At the hearing, the department's social work case manager pointed to "six total" founded child abuse reports against the mother for dangerous substances. She opined the children could not be returned to the mother's custody.

The mother confirmed her extensive history of illegal substance use. She testified that she began using methamphetamine thirteen years earlier and used marijuana for five years before that. She stated her current "clean date" from methamphetamine was a little over two months before the termination hearing, and she characterized her refusal to take a drug test several days before the hearing as "a miscommunication."

On our de novo review, we are persuaded the mother was not in a position to have the children returned to her custody. As the district court stated:

> [The mother] has demonstrated that she can be an engaged and attentive parent when sober and supervised. [She] has not demonstrated that she can maintain her sobriety for any substantial length of time. [Her] alleged sobriety since her [last] relapse is questionable, given [her] refusal to submit to testing in January of

2022 and her disengagement with substance abuse and mental health treatment. The [children] have been out of [her] care since October 5, 2020, a period of over 20 months and cannot safely be returned at this time.

We turn to the mother's contention that the department failed to make reasonable reunification efforts. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) ("The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent."). The mother does not specify how the department fell short. On our de novo review, it is evident the department provided a host of reunification services, including inpatient substance-abuse treatment at two facilities, outpatient substance-abuse treatment, and mental-health treatment. The reasonable-efforts mandate was satisfied.

Termination must be in the children's best interests. *See* Iowa Code § 232.116(2). The case manager was asked whether the mother was "a sober parent to the level that there [were] no safety concerns for the [d]epartment." She responded, "No." The State established the mother could not safely parent her children. We conclude termination was in the children's best interests.

As noted at the outset, the mother also cites the closeness of the parent-child bond as a basis for reversal. This argument implicates an exception to termination. *See id.* § 232.116(3)(c). The case manager testified that the older child "love[d] her mother very much" but felt "much more stable" in her current placement. The mother conceded as much and the record indicates that the older child understood the implications of her mother's ongoing drug use and chose not to attend supervised visits. The younger child was more equivocal on her desires for a permanent placement, but her diabetes diagnosis made it imperative that she

live with a vigilant caretaker. On our de novo review, we conclude there was no basis for granting an exception to termination based on the parent-child bond.

Finally, the mother suggests the creation of a guardianship was a better option than termination of parental rights. The case manager was against that option. She stated in part that "the history of this family's involvement with the [d]epartment would indicate that it's important . . . to have established permanency through termination of parental rights and adoption." We agree. *See In re W.M.*, 957 N.W.2d 305, 315 (Iowa 2021) ("[A] guardianship is not a legally preferable alternative to termination.").

We affirm the district court's decision to terminate the mother's parental rights to the two children.

**AFFIRMED**.